Application of MORRIS, et al.

No. 7409-CCT.

Florida Public Utilities Commission.

October 26, 1964.

A. Pickens Coles of Coles, Himes & Talley, Tampa, for the joint applicants.

Dan R. Schwartz of Schwartz, Proctor & Bolinger, Jacksonville, for American Van & Storage Inc., Bader Brothers Transfer & Storage Co., Bond Transfer, Inc., Brown Moving & Storage, Caldwell Bonded Warehouses, Inc., Caldwell Bonded Warehouses of St. Petersburg, Inc., Delcher Brothers Storage Co., Inc., Elder Moving & Storage Co., Inc., Fargo Van & Storage, Inc., Gainsville Bonded Warehouses, Inc., Lee County Terminal, Inc., May's Transfer, Inc., O. K. Storage & Transfer, Inc., Peace River Moving & Storage, Public Bonded Warehouse & Storage Co., Inc., Ridgway Transfer & Storage Co., Inc., Sarasota Transfer & Storage Co., Inc., Southern Transfer & Storage Co., Weathers Bros. Transfer, Inc. and Withers Van Lines, protestants.

O. C. Beakes, Jacksonville, for Joiner Van & Storage Service, Inc., Rapid Moving & Storage Co., Suddath Moving & Storage, Jacksonville, Acme Moving & Storage Co., Bloodworth Transfer & Storage, Inc., Fulford Van & Storage, Co., Howard Van & Storage Co. and Melbourne-Eau Gallie Moving & Storage Co., Inc., protestants.

Chairman EDWIN L. MASON, Commissioners JERRY W. CARTER and WILLIAM T. MAYO each participated in the disposition of this matter.

BY THE COMMISSION.

Pursuant to statutory notice the commission by its duly designated examiner, William L. Weeks, held public hearings on this application at the State Office Bldg., Miami, on May 4, 1964, and at the State Office Bldg., Winter Park, on May 13 and 14, 1964.

The hearing examiner filed his recommended order in the above docket approving the transfer of the controlling interest in John Morris Transfer & Storage, Inc. to North American Van Lines, Inc. The protestants filed exceptions to the recommended order and the commission heard oral argument on the exceptions on September 17, 1964, in the commission hearing room at Tallahassee.

The protestants set forth twelve grounds as a basis of error in the hearing examiner's recommended order. Some of these grounds are essentially the same and will be so treated in the following discussion —

Grounds 1 and 2 of the exceptions pertain to the meaning of the phrase "public interest." The protestants contend that the phrase "public interest" contemplates the relationship of the adequacy of existing transportation service and also comprehends the interest of competing carriers. The effect of a particular carrier's operation on existing service and facilities is specifically required to be determined before the issuance of a certificate of public convenience and necessity. The statute pertaining to transfer of the certificate or the operating rights thereunder (section 323.041) does not require specific findings as to the effect of the proposed transfer on competing carriers. It is believed that the term "public interest" has a broader meaning as used in section 323.041. The hearing examiner so considered it and found that the proposed transfer was not adverse to the public interest. Grounds 1 and 2 of the exceptions are not sufficient to cause a reversal of the hearing examiner.

As Ground 3, the protestants allege that the hearing examiner failed to find that they, the protestants, are rendering an adequate service and have felt no competition from John Morris in the past. Section 323.041 does not require any such findings before approval of a transfer. As the hearing examiner pointed out, it is assumed that all certificated carriers render adequate service and compete with each other for the available traffic.

In respect to ground 4, the protestants allege that the transfer will result in a new competitive service bearing little resemblance to the service heretofore provided by John Morris and thereby disrupting the competitive balance with harmful effects on the protestants. The hearing examiner found that evidence on this part was purely speculative in nature and did not warrant denial of the transfer. The commission concurs with the examiner on this point and finds that it is insufficient to warrant reversal of the hearing examiner.

Ground 5 of the exceptions is essentially the same as 1 and 2, and it too is insufficient.

Ground 6 sets forth that the hearing examiner failed to find that there would be any particular benefit to the public as a result of the proposed transaction. The statute does not require the findings of any particular new benefit, but only requires that the transfer not be contrary to the public interest. Ground 6 is insufficient to warrant denial of the transfer.

Ground 7 is a generalization encompassing the meaning of the term "public interest" and does not warrant denial of the transfer.

Grounds 8 and 9 pertain to the alleged dormancy of the applicant John Morris. It is felt that this is answered by the case of Van Arsdale v. King, 149 So.2d 353. That case held that carriers such as John Morris cannot be found to be partially dormant under the meaning of subsection 323.10 (2).

Ground 10 is a generalization pertaining to the public interest and is not sufficient to warrant the denial of the transfer.

Grounds 11 and 12 merely state that the examiner was wrong and are insufficient to warrant denial of the application.

Therefore, the commission finds the exceptions to be without merit and now enters its own order approving the transfer.

By this application, North American Van Lines, Inc., hereinafter called North American, seeks authority under section 323.041, Florida Statutes, to acquire control of John Morris Moving & Storage, Inc., hereinafter called John Morris, through purchase of all its outstanding capital stock.

The transferor, John Morris, is a motor highway common carrier of household goods operating non-radially, over irregular routes, between all points within the state of Florida with motor vehicle equipment domiciled in Miami under certificate of public convenience and necessity no. 469 issued by this commission. John Morris has fifty shares of outstanding capital stock, forty shares of which are owned by John E. Morris and his wife, nine shares by Robert E. Cook, Jr., and his wife, and one share by Lucia Morris Kindred.

The transferee, North American is a corporation having its principal place of business at Fort Wayne, Indiana, and is authorized to transport household goods in interstate commerce between points in all fifty of the United States except Hawaii, under certificate of public convenience and necessity no. MC-107012, and subs thereunder, issued by the Interstate Commerce Commission. It also holds intrastate authority in the states of Alaska, California, Indiana, Iowa, Michigan, Missouri, New York and Texas.

The joint application sets forth fully the terms of the transaction, the consideration involved, the method of payment, the date the sale of the stock is desired to be consummated, and the financial statement and operating authority of North American.

Upon notice of the joint application, pursuant to law, counsel for the protestants filed written protests objecting to the transfer of stock on the grounds that the application failed to set forth

sufficient information; that the proposed transfer was contrary to the public interest; and, that the operations of John Morris had been dormant for more than six months. Further, protestants' counsel propounded interrogatories to the joint applicants prior to the hearing, all of which said interrogatories were duly answered.

Under the provisions of subsection 323.041(3), Florida Statutes, the commission must determine if the operations of John Morris under its certificate have been dormant for more than six months, and also that the transfer of the stock from John E. Morris and his family to North American is not contrary to the public interest.

From the answers to the interrogatories and from the testimony and evidence adduced at the hearing as to the in-fact transportation of household goods performed by John Morris during the last year, which was uncontradicted, it is obvious that the operations of John Morris have not been dormant and the commission so finds.

John E. Morris, one of the principal stock holders of the transferor corporation, testified that he had been connected with the corporation since its inception in 1947 and operates under said certificate no. 469; that the corporation had five booking agents, none of whom were certificated carriers; that the stockholders of John Morris negotiated with North American at arms length before entering into a contract for the purchase of said stock for the sum of $47,300, $1,300 of which has been paid down with $10,000 to be paid upon approval of the transfer, with the balance to be paid in 36 equal monthly installments of $1,000 each, plus interest on the unpaid principal balance at the rate of 5% per annum, payable monthly; and, that he and his family had agreed to sell the stock for the reason that he was 65 years of age and had suffered two slight strokes within the last two years.

Jack E. Schang, the administrative assistant to the president of North American, testified to the operating authority of his company, the financial condition of his company; and that as of November 30, 1963, his company had total assets of $19,628,479 and had net earnings after taxes for eleven months in the amount of $1,480,633. Mr. Schang further testified that John Morris would be operated as a wholly owned subsidiary of North American; that his company did not intend to change the booking agents of its subsidiary; that the company would not use the equipment of John Morris in handling interstate traffic of North American nor would the equipment of North American be used to transport

intrastate traffic of John Morris; that only one additional piece of equipment would be added to the fleet; that North American did not intend to use any of its booking agents in Florida for booking intrastate shipments for John Morris; and, that depending upon advice of counsel, his company would domesticate in Florida after acquisition of the stock, and that his company and the subsidiary, John Morris, would comply with the laws of the state of Florida and the rules and regulations of the commission.

The application is opposed by some twenty-eight protestants, ten of whom appeared and offered testimony and evidence. All of the protesting carriers hold similar operating rights from the commission as that of John Morris, except that in most cases such protesting carriers have the right to domicile equipment in numerous places whereas John Morris has the right to domicile equipment only in Miami. Some of the protestants also had numerous booking agents throughout Florida. In addition to the intrastate operating authorities under certificates issued by the commission, several of said protestants have vast interstate authority under certificates issued by the Interstate Commerce Commission, embracing, as an example, all states east of the Mississippi River. The protesting carriers in most instances introduced into evidence their balance sheet and operating statements and testified generally that their strictly line haul intrastate operations were conducted at a loss or close to a break-even point. It was the general contention of the protestants that the trucking portion of their intrastate business, as opposed to the packing, crating and storage portions, is unprofitable and any loss of traffic would have an adverse effect on the business. However, the financial exhibits do not support, with any degree of accuracy, such testimony for the reason that no attempt was made to determine the instrastate operating ratio. Little weight may be afforded to said exhibits. In addition to the financial exhibits, the protesting carriers objected to the transfer on the ground that North American, being a large interstate carrier, would, in its control of John Morris, increase competition to such an extent that it would jeopardize their business. Such testimony is highly speculative and is contrary to the testimony of the witness for North American.

In rebuttal the joint applicants produced two carrier witnesses, both of whom supported the application. One of these carriers held intrastate authority only and was agent for a national interstate carrier. The other carrier held not only intrastate authority but vast interstate authority. This carrier testified that a national carrier such as North American can render better service to the

public on small shipments. Both of these carriers testified that the transfer sought in this proceeding would not have any effect on their respective operations.

It is obvious that all of the protesting carriers presently compete one with the other, not only for intrastate traffic, but also for either transporting or booking interstate traffic. Until the contrary appears, the commission assumes that every carrier holding a certificate of public convenience and necessity will render efficient service to the shipping and receiving public and in doing so compete with other like carriers for the available traffic. Also, it is obvious that the protesting carriers fear that North American could or would be a more aggressive competitor than John Morris has been in the past; however, such speculative fear does not tend to prove or disprove the issue involved in a transfer proceeding. It is to be noted that subsection 323.03(3), Florida Statutes, provides that before the commission may grant a new certificate, it shall take into consideration the effect such granting might have upon existing transportation facilities. However, under Section 323.041, Florida Statutes, which governs the transfer of a certificate as sought here, there is no requirement or provision calling for the commission to look to the effect the proposed transfer might have upon existing transportation facilities, but only directs consideration of the questions of dormancy and as to whether or not the proposed transfer is contrary to the public interest. To accept the protestants' line of argument would, in effect, require the commission in a transfer proceeding to find that the proposed transferee's financial condition is reasonably similar to that of the proposed transferor and that the proposed transferee would not strive to hold out and render to the public its authorized transportation service in a more aggressive competitive manner (unrelated to rates) than theretofore performed and held out by the proposed transferor. In the commission's opinion this would penalize the public and deny to it the possibility of more efficient and improved service. Certainly it may be properly stated that the mere anticipation that this transfer could have some unknown quantity of adverse effect upon existing transportation facilities is not sufficient to warrant a finding that a proposed transfer is contrary to the public interest.

In consideration of the premises and after due consideration of the entire record in this cause, the commission finds —

1. That the joint application for the transfer of the capital stock of John Morris Moving & Storage, Inc. from John E. Morris and the other stockholders to North American Van Lines, Inc.

fully complies with the provisions of subsection 323.041(2), Florida Statutes.

2. That the joint applicants have established by competent, substantial evidence that the operating rights of John Morris Moving & Storage, Inc. are not dormant, as this commission is required to find under the provisions of subsection 323.041(3), Florida Statutes.

3. That the transferee, North American Van Lines, Inc., is able financially and otherwise to conduct the operations of John Morris Moving & Storage, Inc. as a wholly owned subsidiary.

4. That the joint applicants have established by competent, substantial evidence and from the record as a whole that the transfer of the stock from the stockholders of John Morris Moving & Storage, Inc. to North American Van Lines, Inc. is not contrary to the public interest.

It is therefore ordered that the transfer of the capital stock of John Morris Moving & Storage, Inc., 26 N. E. 7th Street, Miami, Florida, from John E. Morris, Louise I. Morris, Robert H. Cook, Jr., Mary Morris Cook and Lucia Morris Kindred to North American Van Lines, Inc., 7600 NW 68th St., Miami, Florida, be and the same is hereby approved.